[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11146
Non-Argument Calendar
_____

D. C. Docket No. 05-00181-CV-WTM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TRACEY DUDLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 8, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

On the morning of March 15, 2005 Judge Louisa Abbot's secretary, Angela

Bufalini, who routinely opens the chambers' mail, let out a loud scream and walked into Judge Abbot's office covered in white powder. Ms. Bufalini explained that it happened when she opened a letter. She went into the bathroom to try to wash the substance off. Suspecting the white powder might be anthrax, the judge asked Ms. Bufalini to notify the sheriff's office. After washing her hands, the secretary handed the letter to Judge Abbott's primary deputy, Anthony Davis. The sheriff's office was notified, and Judge Abbot was told to leave the building.

The sheriff's office placed Ms. Bufalini and Deputy Davis under quarantine in her office. Judge Abbott went home. Ms. Bufalini called to let her know the contents of the letter which reads:

> The judicial system has been very unfair and cruel to people like myself. You and your courtroom has contributed to this unfairness for which I and my relatives as well as my homies has suffered. What happened to the judge in Atlanta was fair and just. He received reward for handing down unjust sentences with his racial ass. So I'm acting as a judge and is handing down a just sentence on you. You've just been infected and contaminated with anthrax bitch. If I ever get the opportunity or appear in your courtroom I will definately [sic] kill you, your deputies and anyone else who get in my way and try to stop me. Until then you will die slowly from anthrax. Die Bitch. May death visit you. Death. Die bitch. Death.

Presentence Investigation Report ¶ 5 (quoting letter reproduced with errors). The letter was not signed, but the envelope contained a return address indicating the

2

sender was "Emmanuel Porter," an inmate at Coastal State Prison.

Ms. Bufalini and Deputy Davis remained in quarantine for several hours while the Savannah Fire Department hazardous materials unit tested the substance to determine whether it was anthrax. While it was later determined that the white powder was not anthrax, Judge Abbott remained at her home for approximately three hours thinking that it was and that someone had intended to kill her. The statement in the letter that "[w]hat happened to the judge in Atlanta was fair and just" was an obvious reference to the murder of Superior Court Judge Rowland Barnes who was killed in his Atlanta courtroom on March 11, 2005, just four days before Judge Abbott received the threatening letter

The sheriff's office called to inform Judge Abbott that she would be under twenty-four hour guard and that she needed to inform her family of the incident. Her fourteen-year-old daughter returned from school, and Judge Abbott told her about the incident, instructed her not to go to the door, and said that she would need to be accompanied by her father for the remainder of the day. At the sentencing hearing Judge Abbott stated: "I remember the tears on my daughter's face as she had to accept the reality that there was someone out there in the world who wanted to murder her mother."

Later that day Judge Abbot returned to the courthouse. She was informed

that the sheriff's department was conducting an investigation and the Federal Bureau of Investigation had been notified. She learned that half of the second floor of the courthouse had been vacated and another judge's chambers evacuated. She also explained at sentencing that "[a]t that time this occurred there was a high-profile murder case going on. Court TV was televising it. There were extraordinary efforts to keep other people from knowing about this [letter] because of the fear of causing a mistrial" in that case.

When Judge Abbott returned home she had police protection. She explained: "Deputy Davis remained with me throughout that evening. He accompanied me wherever I went. He checked out my house, my yard. We had no idea whether or not this came from someone outside of the walls of a prison, or inside the walls of a prison, or whether or not it came from a family member of someone inside a prison. We had no idea. I was accompanied throughout the next day. Ultimately it was determined that [the letter] did come from Coastal [State Prison], and that I no longer needed to be required to have protection, but just to continue to exercise caution."

The substance in the envelope was analyzed by the Centers for Disease Control in Atlanta, Georgia and the FBI's forensic laboratory in Quantico, Virginia, where it was determined that the envelope contained talcum powder. The

4

FBI investigation revealed that the letter was not sent from Emmanuel Porter, but instead was sent from Tracey Dudley who was also an inmate at Coastal. Dudley admitted that he wrote Porter's name in the return address line because he hoped that sending the letter would induce Judge Abbott to arrange for Porter's removal from Coastal. That hope was not realized.

Instead, on July 14, 2005, Dudley was indicted with one count of mailing a threatening communication in violation of 18 U.S.C. § 876(c). Dudley pleaded guilty and entered into a written plea agreement with the government. The district court sentenced him to 60 months imprisonment, and he now contends that the district court erred at sentencing by: (1) enhancing his sentence pursuant to U.S.S.G. § 2A6.1(b)(4) for substantially disrupting public or governmental functions and (2) denying his request for a downward departure under U.S.S.G. § 5H1.4 based on his HIV-positive status.

## I.

Dudley supports his first contention, that the district court erred in enhancing his sentence under U.S.S.G. § 2A6.1(b)(4), with four arguments: (1) any disruption of public or governmental functions that resulted from his threatening communication was not "substantial"; (2) the enhancement constituted impermissible double-counting as his offense was already enhanced for threatening

a public official; (3) the district court improperly relied on hearsay at his sentencing hearing; and (4) the enhancement violated his Sixth Amendment due process rights under Booker and Apprendi.

**A.**

Dudley's first argument with respect to § 2A6.1(b)(4) is that the interference resulting from his letter was not a "substantial disruption." We review the district court's application and interpretation of the sentencing guidelines de novo. United States v. Norris, 452 F.3d 1275, 1280 (11th Cir. 2006).

Section 2A6.1(b)(4) of the guidelines provides that an offense level for threatening or harassing communications may be enhanced if "the offense resulted in (A) substantial disruption of public, governmental, or business functions or services." U.S.S.G. § 2A6.1(b)(4). No other circuit has addressed this specific guideline enhancement in a published opinion, but some have addressed the meaning of "substantial" in the context of interference with the administration of justice under § 2J1.2(b)(2). See United States v. Leung, 360 F.3d 62, 67–68 (2d Cir. 2004) (the cost of interviewing numerous witnesses where the defendant faked his own death to avoid prosecution was substantial); United States v. Tankersley, 296 F.3d 620, 623 (7th Cir. 2002) (the cost associated with weeks of investigating to find proceeds from the sale of a yacht and to uncover other assets was

6

substantial); <u>United States v. Alwan</u>, 279 F.3d 431, 436–37, 440–41 (7th Cir. 2002) (the interference with administration of justice caused by defendant's continued refusal to testify before the grand was substantial); <u>United States v. Sinclair</u>, 109 F.3d 1527, 1540 (10th Cir. 1997) (the interference with administration of justice caused by forcing the reinterviewing and recalling of two witnesses was substantial).

The dictionary defines "substantial" as "of ample or considerable amount, quantity, size, etc." Random House Unabridged Dictionary 1897 (2d ed. 1993). It defines "disruption" as "forcible separation or division into parts" or "a disrupted condition." <u>Id.</u> at 569. The word "disruption" cross-references to "disrupt," which means "to cause disorder or turmoil in." <u>Id.</u>

Dudley's threatening letter resulted in closing half a floor of the state courthouse for two hours and the suspension of judicial business involving Judge Abbott for longer than that. The letter also resulted in an interruption of judicial business involving Judge Penny Freesemann, whose chambers were located in the same building. During that time, the hazardous materials unit responded to the emergency and an officer and Judge Abbott's secretary were placed under quarantine while the FBI determined whether the white powder from the envelope contained anthrax. In addition, the sheriff's department had to place an officer on a

7

24-hour security detail to protect Judge Abbott. Afterwards, she had to spend many hours speaking with the F.B.I. and U.S. Attorney's office about the case.

As the district court put it: "That seems pretty substantial to me." The disorder and turmoil caused by Dudley's letter was, in the terms of the dictionary definition, "of ample or considerable amount." Judge Abbot and another judge in the building were entirely prevented from doing their jobs for several hours on the day the letter arrived, and Judge Abbot has been distracted from her work for many hours since that time as a result of the letter. Not only that, but law enforcement personnel were diverted from their other duties to provide around-the-clock security for the judge.

**B.**

Dudley's next argument regarding § 2A6.1(b)(4) is that it constitutes impermissible double counting because he also received an enhancement under U.S.S.G. § 3A1.2(b) that was based on the victim's status as a judge. We review de novo a claim of double counting. United States v. Perez, 366 F.3d 1178, 1183 (11th Cir. 2004). "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Rodriguez-Matos, 188 F.3d 1300, 1309 (11th

Cir. 1999) (quotation marks and citation omitted). We presume that the Sentencing Commission intended separate guidelines sections to apply cumulatively, "unless specifically directed otherwise." Id. at 1310 (emphasis omitted). "Double counting a factor during sentencing is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995).

Application of both enhancements in this case does not constitute impermissible double counting. The harm resulting from the victim's status as a judge who was threatened which is accounted for under § 3A1.2(b) differs from the harm resulting from the substantial disruption to government functions which is accounted for under § 2A6.1(b)(4). The enhancement resulting from Judge Abbott's professional status flows from the need to protect judges from threats. As Judge Abbot stated in her testimony: "The sanctity of the rule of law is what keeps our civilization intact. When judges are murdered and are threatened with violence, the fabric of our society is threatened. If people cannot come to courthouses and feel that the laws will be enforced in a safe and secure environment, our very freedoms are at great risk." The harm at which the § 2A6.1(b)(4) substantial disruption enhancement is aimed is conceptually distinct

9

from the harm that Dudley's threat caused by preventing the judge from fulfilling her duties for a period of time and also by diverting other officials and officers from their other duties.

## C.

Dudley's third argument against application of § 2A6.1(b)(4) in this case is that it was applied in violation of the Confrontation Clause because the district court relied on hearsay testimony at sentencing. Because Dudley did not raise this argument before the district court, we review it only for plain error. United States v. Luciano, 414 F.3d 174, 178 (11th Cir. 2005). Under plain error review, there must be (1) an error, (2) that is plain, and (3) affects substantial rights. United States v. Olano, 507 U.S. 725, 730–32, 113 S. Ct. 1770, 1776 (1993). When these three factors are met, we may exercise discretion and correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Id.

Dudley's argument is foreclosed by our decision in United States v. Chau, 426 F.3d 1318, 1323 (11th Cir. 2005). There we held that a district court's reliance on hearsay testimony at a sentencing hearing is not plain error. Id. Chau controls. If the district court did rely on hearsay testimony to enhance Dudley's sentence, it did not plainly err in doing so.

**D.**

Dudley's fourth argument against the § 2A6.1(b)(4) enhancement of his sentence is that it violated his Sixth Amendment due process rights. Dudley argues that his sentence violates Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), because the enhancement was based on facts he did not admit. Because this argument is raised for the first time on appeal, we review it only for plain error. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000).

Dudley pleaded guilty to the offense of mailing a threatening communication and was sentenced to the statutory maximum of five years for that offense. Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362–2363. Here, Dudley was not sentenced beyond the statutory maximum, so there is no Apprendi error.

Booker holds that "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398 F.3d 1291,

11

1298 (11th Cir. 2005), <u>cert. denied</u>, 125 S. Ct. 2935 (2005).  After <u>Booker</u>, district courts may still impose fact-based sentencing enhancements under an advisory guidelines system without violating the Sixth Amendment.  <u>See</u> <u>id.</u> at 1300.

In this case, the district court explicitly stated that it was sentencing Dudley under an advisory guidelines system.  As a result, any judicial fact-finding by the district court did not violate the Sixth Amendment.  There was no <u>Booker</u> error.

## II.

Dudley's final contention is that the district court erred in denying his § 5H1.4 motion for a downward departure based on his HIV status.

We lack jurisdiction to review a district court's decision to deny a downward departure unless the district court incorrectly believed that it lacked authority to grant the departure.  <u>United States v. Winingear</u>, 422 F.3d 1241, 1245 (11th Cir. 2005).  We have noted that "it would facilitate review if sentencing judges would state on the record that they believe they have or do not have the authority to depart," <u>United States v. Sanchez-Valencia</u>, 148 F.3d 1273, 1274 (11th Cir. 1998), but we have never said that such a statement is required.  Instead, we have held that "when nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." <u>United States v. Chase</u>, 174 F.3d 1193, 1195 (11th Cir. 1999).

12

Nothing in the transcript of the sentencing proceedings indicates that the district court thought that it lacked authority to depart downward; instead, the transcript suggests that the court understood that it could depart, but chose not to do so. We do not have jurisdiction to review the underlying merits of the request for a departure.

**AFFIRMED.**