[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2011
JOHN LEY
CLERK

_____

No. 10-13419
Non-Argument Calendar

_____

D.C. Docket No. 0:09-cr-60301-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRESTWELL PHILLIP MICKLEWHITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 15, 2011)

Before EDMONDSON, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Crestwell Micklewhite pleaded guilty to conspiracy to possess with the

intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§

841(b)(1)(A) and 846. He was sentenced to 60 months imprisonment, the mandatory minimum sentence. He contends that the district court erred when it denied him safety-valve relief under U.S.S.G. § 5C1.2(a) and 18 U.S.C. § 3553(f). Specifically, he argues that the court erred when it found that his sentencing testimony was untruthful and that it erred when it permitted hearsay testimony during sentencing.[1]

I.

In early October 2009, a confidential informant set up a drug deal to purchase a kilogram of cocaine. Eventually it was determined that the CI would meet with Eric Williams in a Lowe's parking lot to make the exchange.[2] On October 8, 2009, the CI and Williams met in the Lowe's parking lot. Williams entered the CI's car and the CI "flashed a roll of cash." Williams told the CI that he would be able to deliver the cocaine within an hour. Williams then left the CI's car and called Micklewhite, who possessed the cocaine.[3] It was decided that

---

[1]Micklewhite also argues that the district court violated his rights under the Confrontation Clause of the Sixth Amendment by permitting that hearsay testimony to be introduced at sentencing. He conceded, however, that "any panel of this Court is bound to reject [his] Confrontation Clause argument." See United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005) ("The right to confrontation is not a sentencing right."). We agree, and thus reject that argument. See id.

[2]Two other people, Pedro Quintero and Wilbert Benoit, were also involved in the transaction, but they are not discussed further in this opinion because they are not relevant to any of the issues.

[3]It is not clear when Micklewhite came into possession of the cocaine. It is undisputed, however, that Micklewhite had the cocaine and brought it to Williams.

Micklewhite and Dennis Pierre, who had a loaded handgun containing 14 rounds of ammunition, would bring the cocaine to a mall parking lot where the transaction would be consummated.

Micklewhite and Pierre drove to the mall and pulled up next to Williams' car. Williams got out of his car, retrieved a black bag containing the cocaine from Micklewhite's car, and got back into his own car. Williams then drove his car to the other side of the mall parking lot where the CI was waiting. Micklewhite drove his car to the same area of the parking lot and parked near Williams' car. While Williams got into the CI's vehicle with the cocaine, Micklewhite and Pierre stayed in their car. The police then arrested them.

Micklewhite was charged with possessing with the intent to distribute 500 grams or more of cocaine and conspiracy to possess with the intent to distribute 500 grams or more of cocaine. He pleaded guilty to the conspiracy charge, and the possession charge was dropped. Micklewhite's guidelines range was 46 to 57 months imprisonment. However, the mandatory minimum sentence for his crime was 60 months imprisonment. Micklewhite argued that he was entitled to safety-valve relief, which under certain circumstances permits the court to sentence a defendant below the mandatory minimum. The government argued that Micklewhite was not entitled to that relief because he had not truthfully provided

3

the government with all the information concerning the offense. Specifically, the government argued that Micklewhite did not fully divulge his involvement in the transaction. His lack of candor included his claim that he was not acting as surveillance for Williams while Williams was finalizing the sale with the CI and that he was not compensated for his involvement in the drug deal.

At the sentence hearing the court heard testimony on whether the requirements for safety-valve relief had been met. First, Micklewhite testified about the events of October 8, 2010. He said that day Williams had called him and asked, "Can you do me a favor? Can you take this thing from me until I call you when I'm ready?" Even though Micklewhite was unemployed and suspected that this was a drug deal, he claimed that he agreed to do this "favor" for free. Later that day Williams called him and said, "Okay, I'm ready. I brung [sic] the stuff to the Broward mall." According to Micklewhite, this was convenient because he was already planning to go to the mall to buy some shoes. Micklewhite then met Williams at a gas station to get the cocaine from Williams, and he went to Pierre's house to wait for Williams' call.

According to Micklewhite, shortly thereafter Williams called him to tell him to come to the mall with the cocaine. Micklewhite said that he told Williams that he did not want to be part of the deal, so they should meet on the "east side" of the

mall. Micklewhite drove to that part of the mall and gave Williams the cocaine. Williams then drove to another corner of the mall to meet with the CI. Even though Micklewhite said that he wanted stay away from the drug deal, he claims that he coincidentally drove to that same corner of the mall where the drug deal was taking place because that area was closer to the shoe store he wanted to visit. And although Micklewhite stated in his plea agreement that he "drove to the same area . . . [and] parked in close proximity" to Williams' and the drug deal, Micklewhite testified at the sentence hearing that he did not even see Williams, Williams' car, or where the drug deal was occurring. Then, instead of getting out of the car and going to the shoe store, Micklewhite claimed that he and Pierre—who was carrying a loaded gun—coincidentally decided to stay in their car for a while next to where the drug deal was taking place. According to Micklewhite they were not acting as "surveillance," but instead he wanted to smoke a cigarette before going into the shoe store.

John Loges, a police officer, testified next. Although he was not personally at the crime scene, he spoke with the officers who were there and read their reports. He testified that at first Micklewhite parked his car next to Williams' car in the northeast corner of the mall parking lot. After Williams' retrieved a black bag from Micklewhite's car, Williams drove to a different part of the parking lot

5

and far away from the entrance of the mall, which was where the CI was waiting. Micklewhite immediately followed Williams' car to the other part of the parking lot and parked about 30 yards away. Officer Loges explained that even though there were plenty of parking spots closer to the entrance of the mall, Micklewhite parked near Williams' car, which was several hundred yards from the entrance.

The district court did not think that Micklewhite's testimony made sense:

> He's going to the mall to buy sneakers. Why don't you smoke your cigarette right there and go into the mall? No, he drives the car, just so happens, to another parking area, just so happens to be right by where this deal is going down, and that's where he decides to sit and smoke his cigarette and go into the mall. If you want to smoke your cigarette and go into the mall, you stay where you are after you deliver a package, you smoke your cigarette and go into the mall. You don't drive to the same area where the drug deal is going down and then smoke your cigarette and then go into the mall. You see, it just doesn't fit, doesn't make sense.

Micklewhite's attorney responded by arguing that Micklewhite's testimony was so unbelievable that it must be believed: "It doesn't make sense. I agree with you it doesn't make sense. . . ., which frankly is why it has to be truthful, because it doesn't make any sense."

The court disagreed. Focusing on Micklewhite's own testimony, the court denied Micklewhite's request for safety valve-relief. It explained:

> I don't believe his testimony about the surveillance. It doesn't make any sense. He lied about it. He lied about not following the car, he lied

6

about how long—you know, why he parked there. That's just not truthful. Why, I don't know. It doesn't make sense. But I think the reason . . . [h]e's not admitting to things about this limited case and the limited facts in this case that would get him Safety Valve is because it leads to admissions about other activities that he wants to somehow protect himself from or not admit to.

Micklewhite appealed.

III.

"The question of whether the information [a defendant] supplied to the government [at] his sentencing was truthful and complete [] is a factual finding for the district court." United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000). We review factual findings regarding safety-valve relief for clear error. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). We will not find clear error unless the record leaves us "with the definite and firm conviction that a mistake has been committed." United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003) (citation and quotation omitted).

The safety-valve provision of U.S.S.G. § 5C1.2(a) enables sentencing without regard to the statutory minimum for certain offenses if five criteria are met. See United States v. Milkintas, 470 F.3d 1339, 1344–45 (11th Cir. 2006). The only issue here is whether Micklewhite met the fifth criterion, which required him to have "truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense . . . ." 18 U.S.C. § 3553(f)(5); U.S.S.G.

7

§ 5C1.2(a)(5). The burden is on the defendant to show that he meets all the criteria. United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004).

Based on Micklewhite's own nonsensical and incredible testimony, the district court found that he did not meet his burden of proving that he truthfully provided the government with all information related to his participation in the drug deal. Micklewhite responded by arguing that he had met his burden because "frankly . . . it has to be truthful, because it doesn't make any sense." That argument, like the testimony it describes, does not make any sense. The district court did not clearly err.

## IV.

Micklewhite did not object to the district court's decision to permit Loges' hearsay testimony at the sentence hearing. If a defendant did "not raise [an] argument before the district court, we review it only for plain error." United States v. Dudley, 463 F.3d 1221, 1227 (11th Cir. 2006). "Under plain error review, there must be (1) an error, (2) that is plain, and (3) affects substantial rights. When these three factors are met, [this Court] may exercise discretion and correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id. (citation omitted).

The district court did not err, much less plainly err, by admitting Loges'

8

testimony. "A court may consider any information (including hearsay), regardless of its admissibility at trial, [at sentencing] provided that the information is sufficiently reliable." United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999). The testimony of a police officer that is based on police reports and discussions with other officers who were at the event is sufficiently reliable. And even if the district court erred by admitting Loges testimony, that error did not affect Micklewhite's substantial rights because the court did not rely on that testimony when it denied Micklewhite's safety-valve relief. Instead, the court denied that relief based on Micklewhite's inconsistent and nonsensical testimony. The district court did not plainly err.

**AFFIRMED.**