[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 7, 2012
JOHN LEY
CLERK

No. 11-10497
Non-Argument Calendar

_____

D. C. Docket No. 4:10-cr-00037-RLV-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR IRAM DURAN-FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 7, 2012)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

After pleading guilty to illegally re-entering the United States in violation of

8 U.S.C. § 1326(a) and (b)(2), Defendant Hector Iram Duran-Flores appeals his below-Guidelines sentence of 75 months' imprisonment. After review, we affirm.

## I. BACKGROUND

### A. Criminal History and Three Prior Deportations

A native and citizen of Mexico, Duran-Flores moved to the United States when he was six years old. In 1991, Duran-Flores pled guilty to attempted burglary and was sentenced to five years' probation. In 1993, while on probation, Duran-Flores was convicted of burglary and sentenced to ten years' imprisonment. After completing his sentence, Duran-Flores was removed to Mexico in May 2002. In June 2002, Duran-Flores was arrested by U.S. Border Patrol agents in Texas, and in August 2002 he was convicted of illegally re-entering the United States. Duran-Flores was removed to Mexico again in December 2002. In 2005, Duran-Flores was convicted of burglary and aggravated assault and in 2006 he again pled guilty to illegally re-entering the United States. For the 2006 conviction, Duran-Flores was sentenced to 33 months' imprisonment and 3 years' supervised release. Duran-Flores was removed again on November 13, 2008.

### B. Third Illegal-Re-entry Conviction in 2010

On June 21, 2010, Defendant Duran-Flores was arrested in Georgia for assaulting his brother with a knife. Because he had no permission to re-enter,

2

Duran-Flores was indicted on the present charge of violating 8 U.S.C. § 1326(a) and (b)(2) by illegally re-entering the United States after having been removed. Duran-Flores pled guilty. For violating his supervised release for the 2006 conviction, Duran-Flores was sentenced to 21 months' imprisonment.

## C. Presentence Investigation Report

The Presentence Investigation Report ("PSI") assigned a total offense level of 21, which included: (1) a base offense level of 8 under U.S.S.G. § 2L1.2(a); (2) a sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii) because Duran-Flores was removed after a conviction for a crime of violence; and (3) a three-level reduction under § 3E1.1(a) and (b) for acceptance of responsibility.

Duran-Flores's 17 criminal history points yielded a criminal history category of VI. Given a total offense level of 21 and a criminal history category of VI, the PSI calculated a Guidelines range of 77 to 96 months' imprisonment.

## D. Sentencing

Duran-Flores did not object to the PSI's Guidelines calculations. In a sentencing memorandum, Duran-Flores requested a below-Guidelines sentence of 36 months based on the 18 U.S.C. § 3553(a) factors. Duran-Flores argued that a downward variance was reasonable because his sentence was principally based on the sixteen-level enhancement in U.S.S.G. § 2L2.1, which was (1) "unsupported

by empirical data or cogent explanation" and not based on "any known penal theory," and (2) inappropriately double counted his prior convictions because they increased both his offense level and his criminal history category.

Duran-Flores also requested a lesser sentence based on cultural assimilation. Duran-Flores argued that he moved to the United States when he was six years old and had only a limited connection to Mexico and a limited knowledge of Spanish. Although his sentencing memorandum requests a "departure" based on cultural assimilation, the memorandum relies exclusively on the § 3553(a) factors and not on the provision providing for a departure under the Guidelines. See U.S.S.G. §§ 5K2.0 & 1B1.4; United States v. Sanchez-Valencia, 148 F.3d 1273, 1274 (11th Cir. 1998) (recognizing that the court may grant a downward departure in illegal re-entry cases). To some extent, Duran-Flores was also requesting a downward variance based on the § 3553(a) factors.

At sentencing, the government summarized Duran-Flores's criminal history and requested a sentence in the middle of the Guidelines range. Duran-Flores reiterated the arguments from his sentencing memorandum. Duran-Flores further argued that the factors listed in Application Note 8 to U.S.S.G. § 2L1.2 showed that he had culturally assimilated into the United States. Defense counsel argued that Duran-Flores's cultural assimilation explained "the propensity to reoffend and

it mitigates his conduct. He comes back because he is coming back to home."

After Duran-Flores spoke in allocution, the district court reviewed Duran-Flores's criminal history and rejected the cultural-assimilation claim, stating: "As far as cultural . . . assimilation, one thing you do when you assimilate into the culture of the country is you follow the laws[,] which you have not done." The district court adopted the PSI's Guidelines calculations. Imposing a below-Guidelines sentence of 75 months, the district court stated:

> I have given you a little less than the recommended sentence. I think after considering the factors set out in the sentencing guidelines and in the code section 3553(a), that is a fair and reasonable sentence. I hope it will deter you in the future. I think it punishes you adequately. I have considered all of the factors involved in this case.

Defense counsel objected to the sentence on "reasonableness grounds and for the reasons previously stated." At the end of the hearing, the district court clarified that it was basing the below-Guidelines sentence on the § 3553(a) factors and not on the Guidelines departure for cultural assimilation.

## II. DISCUSSION

### A. Downward Departure

On appeal, Duran-Flores argues that the district court procedurally erred by rejecting his request for a downward departure based on cultural assimilation. "We lack jurisdiction to review a district court's decision to deny a downward

5

departure unless the district court incorrectly believed that it lacked authority to grant the departure." United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006) (citation omitted). Although "it would facilitate review if sentencing judges would state on the record that they believe they have or do not have the authority to depart, . . . we have never said that such a statement is required." Id. (quotation marks and citation omitted). Rather, unless something in the record indicates otherwise, we assume that the sentencing court understood its authority to depart downward. Id.

In this case, the record shows that the district court understood its authority to depart but found a departure unwarranted under the facts of the case. Because the district court understood its authority to depart, we decline to review the court's refusal to grant a downward departure.

**B. Reasonableness**

Duran-Flores also argues that his 75–month, below-Guidelines sentence is both procedurally and substantively unreasonable because (1) U.S.S.G. § 2L1.2(b)(1)(A)(ii) disproportionately increased his offense level, (2) § 2L1.2(b)(1)(A)(ii) inappropriately double-counted his prior convictions, and (3) the district court failed to consider and weigh the factors relating to cultural assimilation in considering a downward variance under 18 U.S.C. § 3553(a).

We review the reasonableness of a sentence imposed under the advisory Guidelines under an abuse-of-discretion standard. <u>Gall v. United States</u>, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The burden of establishing unreasonableness lies with the party challenging the sentence. <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005).

In reviewing the reasonableness of a sentence, we first must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,[1] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." <u>Gall</u>, 552 U.S. at 51, 128 S.Ct. 586.

After determining that the sentence is procedurally sound, we review the substantive reasonableness of the sentence for abuse of discretion. <u>Id.</u> "The weight to be accorded any given § 3553(a) factor is a matter committed to the

---

[1]Under § 3553(a), the court imposes a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from future crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care. 18 U.S.C. § 3553(a)(2). The sentencing court also considers the following factors in determining a sentence: the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the Guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparity, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)–(7).

7

sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks and alteration omitted). The district court need not "state on the record that it has explicitly considered each of the § 3553(a) factors or . . . discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). The record must demonstrate that the district court considered the arguments of the parties and stated reasons for the sentence imposed. Id. at 1330.

Under the Guidelines, a downward departure on the basis of cultural assimilation is appropriate if (1) "the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood," (2) "those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States," and (3) "a departure is not likely to increase the risk to the public from further crimes of the defendant."[2] U.S.S.G. § 2L1.2, cmt. (n.8) (2010).

---

[2]In determining whether a departure based on cultural assimilation is appropriate, the district court should consider the following factors:

(1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the

8

Our review of the record reveals that the district court committed no procedural error in this case. First, although Duran-Flores argues that § 2L1.2(b)(1)(A)(ii) disproportionately increased his offense level and is not based on empirical data or a "cogent explanation," "the absence of empirical evidence is not an independent ground that compels the invalidation of guideline." United States v. Snipes, 611 F.3d 855, 870 (11th Cir. 2010). Thus, although the district court could have considered the lack of statistical support for the enhancement in fashioning a sentence, the district court was not required to do so.

Second, Duran-Flores's argument that § 2L1.2(b)(1)(A)(ii) double-counts his prior convictions is foreclosed by our precedent. See United States v. Adeleke, 968 F.2d 1159, 1161 (11th Cir. 1992) (noting that the double counting of prior convictions was permissible because "[t]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from re-entering the United States").

To the extent Duran-Flores argues that the court procedurally erred in

seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States. U.S.S.G. § 2L1.2, cmt. (n.8) (2010).

failing to consider the factors for cultural assimilation, the record shows that the district court considered the parties' arguments addressing those factors but determined, in its discretion, that a variance was not warranted. And, in any event, Duran-Flores did not challenge the district court's Guidelines calculations in the district court, and he does not challenge them on appeal.

As to substantive reasonableness, Duran-Flores fails to show that his 75–month sentence was unreasonable under the totality of the circumstances. The district court noted Duran-Flores's criminal history, which included several violent offenses, and considered the risk that Duran-Flores would commit future crimes. Furthermore, Duran-Flores committed the present offense while on supervised release for a previous conviction for illegally re-entering the United States. Given Duran-Flores's persistent violations of the United States' criminal and immigration laws, the district court did not abuse its discretion in deeming the sentence necessary to deter Duran-Flores from continuing to disregard those laws.

**AFFIRMED.**