[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10679
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 27, 2012
JOHN LEY
CLERK

Docket No. 4:10-cr-00016-RH-WCS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY DANIEL SNIPES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 27, 2012)


Before EDMONDSON, HULL and BLACK, Circuit Judges.


PER CURIAM:

Jeremy Daniel Snipes appeals his 37-month sentence for transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c).  No reversible error has been shown; we affirm.

Snipes's conviction arose from the following undisputed facts.  The Federal Bureau of Investigation ("FBI") received information that a person -- later identified as Snipes -- had posted various messages on an internet website threatening to shoot members of the Florida National Guard at a weekend drill scheduled to begin the next day.  The FBI also learned that Snipes himself was a member of the Florida National Guard and was scheduled to attend the drill.  In response to this information, several senior officers of the Florida National Guard met to assess the threat level and to determine the appropriate course of action.  Because it was unclear whether Snipes planned on targeting members of his own guard unit or another guard unit, the senior officers increased security measures statewide at all facilities that were hosting scheduled drills that weekend.  This included posting at least 30 additional soldiers at security checkpoints to conduct identification and baggage checks of all personnel entering the designated facilities.  Various state law enforcement officers were also pulled from their regular assignments to provide additional security to the guardsmen throughout

the weekend. Police arrested Snipes a few hours before the drills were scheduled to begin.

On appeal, Snipes argues that the district court erred in applying a four-level enhancement, pursuant to U.S.S.G. § 2A6.1(b)(4)(B), based on the court's determination that Snipes's offense had substantially disrupted government functions. We review questions of law de novo and a district court's factual determinations for clear error. United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004). To conclude that a factual finding is clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." Id. Thus, "[a]s long as the district court's findings are plausible, we may not reverse the district court even if we would have decided the case differently." United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003).

Under section 2A6.1(b)(4), a defendant convicted of a threatening or harassing communications offense receives a four-level enhancement if the offense resulted in a "substantial disruption of public, government, or business functions or services." U.S.S.G. § 2A6.1(b)(4)(A). For purposes of this subsection, we interpret the phrase "substantial disruption" using the plain meaning of those words. See United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006). Thus, using dictionary definitions, we interpret "substantial" to mean

3

"of ample or considerable amount, quantity, size, etc." and interpret "disrupt" to mean "to cause disorder or turmoil in." See id. In Dudley, we concluded that a "substantial disruption" of government functions occurred when the defendant's threatening letter resulted in the closure of half a floor of a state courthouse for two hours, the interruption of judicial business for two judges for several hours, and the quarantine of two court staff members following their exposure to a white powder. Id. In addition, law enforcement officers were "diverted from their other duties to provide around-the-clock security for the judge" for 24 hours and the targeted judge was required to spend many hours away from her judicial duties discussing the details of the offense with the FBI and the prosecution. Id.

Upon a review of the record, we are unconvinced that the district court clearly erred in concluding that Snipes's threats caused a "substantial disruption" of government functions. Several senior officers of the Florida National Guard had to interrupt their daily business to assess Snipes's threats and to decide how to respond. At least 30 soldiers were then pulled from their regular assignments and were stationed at various security checkpoints throughout the state. This increased security measure not only disrupted completely the operations of those 30 soldiers, but also delayed those guardsmen entering each facility to attend drills. Several law enforcement officers were also "diverted from their other duties" to provide

4

additional security at the Florida National Guard facilities. See Dudley, 463 F.3d at 1226. It is true that Snipes's threats -- unlike Dudley's -- did not result in the suspension of the Florida National Guard's scheduled drills or the closure of a facility. But Snipes's threats also caused more widespread disruption than the threat in Dudley because Snipes's threats disrupted many members of the Florida National Guard and state law enforcement units across several facilities over a two-day period.[*] We agree that this disruption was "substantial" enough to warrant a section 2A6.1(b)(4) enhancement.

Next, we address Snipes's argument that the district court erred in applying a six-level enhancement, pursuant to section 3A1.2(b), based on the district court's conclusion that Snipes's threats targeted guardsmen based on their status as government officers or employees. Snipes contends that his threats were directed at members of his unit because of personal issues, not because of their status as guardsmen.

Under section 3A1.2, a defendant receives a six-level enhancement if the victim of his offense was "a government officer or employee" and "the offense of

---

[*]We reject Snipes's argument that he should not be held responsible for increased security measures performed after his arrest, which took place a few hours before the weekend drills were scheduled to begin. We agree with the district court's assessment that -- because the exact nature and scope of Snipes's threats were unclear and because it was unknown whether Snipes would be released on bond -- it was reasonable for the Florida National Guard to maintain a heightened level of security throughout the weekend.

conviction was motivated by such status." U.S.S.G. § 3A1.2(a), (b). But "[t]his adjustment will not apply . . . where both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute." U.S.S.G. § 3A1.2, comment. (n.3).

Nothing evidences that Snipes's threats were motivated by personal disputes with members of his guard unit. Instead, in his written threats, he asserted that he hoped that his acts would result in his discharge or transfer out of his unit. After his arrest, Snipes also told law enforcement officers that he resented his First Sergeant and his other commanding officers because they transferred a fellow soldier out of the unit to undergo an extensive mental health evaluation. Based on Snipes's own statements, he targeted his victims because of their past official acts and because of their authority to grant him a discharge or transfer. Thus, we see no error in the district court's determination that Snipes targeted members of his guard unit because of their status as government officers or employees. See United States v. Bailey, 961 F.2d 180, 182 (11th Cir. 1992) (concluding that a section 3A1.2 enhancement applied when the robbery victim possessed the sought-after money orders and money order validation machine solely because of her status as a government employee).

AFFIRMED.

6