[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16127
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cr-60095-JIC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHERRALYN MILTON-BROWNER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 14, 2012)

Before TJOFLAT, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

A jury convicted Cherralyn Milton-Browner of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, and the District Court sentenced her to prison for 36 months, a term within the Guidelines sentence range of 30 to 37 months.  She appeals her sentence, arguing that the court clearly erred (1) by denying her a mitigating-role adjustment and (2) by denying her a downward departure under U.S.S.G. § 5K2.20 and (3) that her sentence is substantively unreasonable.  We affirm.

Milton-Browner was a Deputy Sheriff in the Broward County Sheriff's Office assigned to the County's detention facility.  She became romantically involved with an inmate, Onakia Griffin.  After Griffin's release, Milton-Browner, Griffin and Sharita Hubbard, Griffin's cousin, engaged in a scheme to commit identity theft and credit card fraud.  They executed the scheme this way.

Hubbard, using her position as a medical records clerk at Oncology and Hematology Associates, provided Griffin with the names and personal information of patients, including their residence addresses.  Griffin, armed with that information, fraudulently obtained credit cards in the patients' names.  So that the cards would not be mailed to the patients's addresses, Griffin had the credit card companies change their addresses to the address for Milton-Browner's mail box.  Milton-Browner retrieved the cards from her mail box—15 in all—and gave them

2

to Griffin.  Griffin used the cards to purchase Milton-Browner meals, a cell phone, a computer and a camera.  She also gave Milton-Browner thousands of dollars in cash she obtained via the cards.

Griffin and Hubbard pled guilty to conspiracy to commit wire fraud, use of a means of identification of another person, use of one or more unauthorized access devices, and aggravated identify theft.[1]  At sentencing, the District Court held Griffin accountable for 32 victims and $153,512 in losses and sentenced her to prison for 24 months.  The court held Hubbard accountable for 15 victims and $87,109 in losses.  Milton-Browner was held accountable for the 15 victims whose cards were sent to her mail box and $108,733.

## I.

Milton-Browner argues that the District Court clearly erred by failing to apply a mitigating-role adjustment to her offense level under U.S.S.G. § 3B1.2. She asserts that her role in the overall scheme was minimal or minor, because she took direction from Griffin, and merely "steered" fraudulently obtained credit cards that came to her mailbox.  She claims that, unlike Griffin, she did not take an "active part" in the acquisition of the cards, and did not control them once acquired.

---

[1]  Griffin testified as a prosecution witness at Milton-Browner's trial.

We review the District Court's finding of Milton-Browner's  role in an offense for clear error.  *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999)(*en banc*).  The Guidelines provide for a reduction in offense level for defendants whose role in the offense was minor or minimal.  U.S.S.G. § 3B1.2.  Minimal participants, those who are "plainly among the least culpable of those involved in the conduct," may receive a four-level reduction.  *Id*. § 3B1.2, comment. (n.4).  The defendant performs a minimal role where she lacks knowledge and understanding of the scope and structure of the offensive conduct and the activities of others involved.  *Id*.  Minor participants, those who are "less culpable than most other participants, but whose role could not be described as minimal," may receive a two-level reduction.  *Id*. § 3B1.2, comment. (n.5).  The defendant must prove that a mitigating-role adjustment is merited by a preponderance of the evidence.  *De Varon*, 175 F.3d at 939.

We consider Milton-Browner's role in the relevant conduct for which she was held accountable.  *Id*. at 940-41.  The court held Milton-Browner accountable for the crime of mail fraud, and the loss associated with credit cards that were sent to her mailbox and delivered by her to Griffin.  She facilitated the acquisition and use of every card.  Therefore, she played a significant role in the relevant conduct.

Milton-Browner nonetheless contends that, compared to the overall scheme,

4

her role was minor or minimal.  Credit cards in the names of 15 victims came to her mailbox, resulting in a loss of $108,733.  She was held accountable for this loss alone, not for the broader scope of the conspiracy, which involved different crimes, a greater number of victims, and a greater financial loss.  She cannot show that she is entitled to a role adjustment by pointing to the broader scheme for which she was not held accountable.  *Id*. at 941.  We only consider that she played an essential role in the relevant conduct that was attributed to her.

While Milton-Browner asserts that she merely took direction from Griffin, she presented no evidence that she lacked knowledge and understanding of the scope and structure of the scheme and the activities of the other participants.  U.S.S.G. § 3B1.2, comment. (n.4).  She knew how Griffin obtained and used the credit cards.  With this knowledge, Milton-Browner volunteered her mailbox for use in the scheme and delivered the cards to Griffin.

Milton-Browner argues that she is less culpable than Griffin.  The District Court had the discretion, but was not required, to consider her role as compared to that of the other participants in the relevant conduct.  *De Varon*, 175 F.3d at 940.

Two others participated in the relevant conduct, Sharita Hubbard and Onakia Griffin.  Hubbard took the personal information of patients of the Oncology and Hematology Associates and gave it to Griffin.  Griffin used the

5

information to apply for fraudulent credit cards.  Milton-Browner offered her

former mailbox for delivery of the cards.  When the cards arrived at her mailbox,

she ensured that they got to Griffin.  Griffin used the cards to purchase items for

herself and Milton-Browner.  The participation of all three was essential to

carrying out the scheme.

The fact that Milton-Browner had a less significant role than the other

participants does not entitle her to a role adjustment.  *See id*. at 946 (stating that

the fact that the defendant was hired by another person to smuggle heroin into the

United States did not alone entitle her to a role adjustment).  She has not shown

that she was "less culpable than most other participants." U.S.S.G. § 3B1.2,

comment. (n.5).  More importantly, she played a significant role in the relevant

conduct for which she was held accountable.  *De Varon*, 175 F.3d at 945.  For this

reason, the court did not clearly err by denying her a mitigating-role adjustment.

## II.

Milton-Browner argues that the District Court erred by denying her request

for a downward departure under U.S.S.G. § 5K2.20.  She asserts that the court's

denial resulted in an unreasonable sentence that was grossly higher than that of her

more culpable co-conspirators.

We lack jurisdiction to review the district court's denial of a downward

departure, unless the court believed that it lacked the authority to depart. *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006).   The record shows that the court understood that it had the authority to depart.  After considering the arguments presented at the sentencing hearing, the court explained that a departure under § 5K2.20 is only available where the defendant committed a single criminal act, without significant planning, for a limited duration of time.  The court found that Milton-Browner engaged in numerous criminal transactions over a period of months, and ruled that she was not entitled to a departure.

The district court knew it had the authority to depart, but determined that a departure was unwarranted.  For this reason, we lack jurisdiction to review the court's determination.  *Dudley*, 463 F.3d at 1228.

### III.

Milton-Browner argues that, based on the 18 U.S.C. § 3553(a) factors, her 36-month sentence is substantively unreasonable.  She argues that her sentence is unreasonable because it is greater than the sentences of her co-conspirators.

We review the reasonableness of a sentence under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007).  The party challenging a sentence has the burden to show that it was unreasonable.  *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir.

7

2007).  We reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011) (quotation omitted).  The court commits a clear error where it imposes a sentence that does not achieve the goals encompassed within § 3553(a).  *Id*. at 1189.  These goals include, *inter alia*, the need to reflect the seriousness of the offense and to deter criminal conduct.  18 U.S.C. § 3553(a)(2)(A), (B).

Milton-Browner has not shown that her sentence is substantively unreasonable in light of the record and the § 3553(a) factors.  Her sentence is within the applicable guideline range, and we ordinarily expect such a sentence to be reasonable.  *See United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).  Her sentence, moreover, meets the goals of § 3553(a), particularly the need to address the seriousness of the offense and to deter future criminal conduct.

We must consider the nature and circumstances of the offense and Milton-Browner's history and characteristics in accordance with § 3553(a)(1).  While she served as a detention deputy, Milton-Browner conspired with one of her former inmates and carried out the conduct in the instant case.  For this reason,

8

there is a heightened need to deter future criminal conduct.  The nature of her crime is particularly serious because of the lasting impact that identity-theft related crimes have on victims.

Milton-Browner argues that her sentence is unreasonable because it is greater than the sentences imposed on Griffin and Hubbard.  If we required the District Court to adjust Milton-Browner's sentence based on the relative sentences of her co-conspirators, it would create disparities between her sentence and the sentences of similarly situated defendants in other cases.  *See United States v. Regueiro*, 240 F.3d 1321, 1325 (11th Cir. 2001) ("[T]o adjust the sentence of a co-defendant in order to cure an apparently unjustified disparity between defendants in an individual case will simply create another, wholly unwarranted disparity between the defendant receiving the adjustment and all similar offenders in other cases.") (quotation omitted).

Further, Milton-Browner has not shown that she and her co-conspirators were similarly situated.  *See United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008) (affirming the district court's sentence where the defendant had not shown that a similarly situated defendant received a shorter sentence).  Unlike her co-conspirators, Milton-Browner held a position of authority at a detention center throughout the scheme.  Also unlike her co-conspirators, Milton-Browner did not

9

cooperate with the government. For these reasons, she has not shown that the sentence disparities were unwarranted. *See id*. (ruling that the disparity between the sentences of two defendants was warranted because one testified against the other).

In light of Milton-Browner's position as a detention deputy, the particular need to deter future criminal acts under these circumstances, and the seriousness of her crime, a sentence within the guideline range is reasonable.

AFFIRMED.