[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11989
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cr-00045-RH-CAS-6


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MACK CECIL DANCER, II,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 15, 2013)

Before MARCUS, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Mack Cecil Dancer, II, appeals his 46-month sentence, contending that the

sophisticated-means enhancement that factored into his guidelines range was either

inapplicable or impermissible double counting. We find application of the enhancement was not erroneous and, therefore, affirm.

Along with seven others, Dancer was charged with producing, using, and trafficking in counterfeit credit and debit cards, in violation of 18 U.S.C. §§ 2, 1029(a)(1) and (c), and conspiracy to do the same, in violation of 18 U.S.C. §§ 371, 1029(a)(1) and (c). Dancer pleaded guilty to both charges. The basic facts of the offense are not in dispute.

One of Dancer's co-conspirators, Frederick Williams, bought stolen credit card numbers online from overseas. Dancer and the other co-conspirators gave Williams legitimate credit and debit cards in their own names, Williams used a specialized device to encode the fraudulent numbers onto those cards, and then the conspirators traveled up and down the interstate in crews to retailers to purchase gift cards and receive cash back. When inside stores, the conspirators would send to one another the checkout line numbers each intended to use via text message, so that each conspirator would know to use a different line. If a card was declined, the conspirator would return it to Williams, who waited outside with a laptop and an encoder, and Williams would re-encode the card with a different number. Afterwards, the conspirators would deliver fraudulently purchased gift cards to Williams, who would resell them online at a discount from face value.

2

In total, there were more than 700 victims of the conspiracy, $3.899 million of attempted loss, and more than $400,000 of actual loss.  Dancer was held responsible for more than 150 victims, $84,627.54 of attempted loss, and $36,950.34 of actual loss.  Dancer does not challenge those findings on appeal.

At sentencing, Dancer objected, among other things, to the 2-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) for use of a sophisticated means that the presentence investigation report included in calculating his Sentencing Guidelines offense level.  He contended the facts upon which the enhancement was based, encoding the cards and the repetitious nature of the scheme, were already accounted for in the enhancements he received for number of victims, loss amount, and the use of device-making equipment, under U.S.S.G. §§ 2B1.1(b)(1), (b)(2), and (b)(11), respectively.  And, in part because he never used the equipment, he argued his guidelines calculation with the enhancement included overstated his culpability.  The district court, however, overruled Dancer's objections and sentenced Dancer to concurrent terms of 46 months' imprisonment, the bottom end of his guidelines range with the enhancement.  This is Dancer's appeal.

A district court's finding that an offense involved sophisticated means is a factfinding we review for clear error.  *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011), *cert. denied* 132 S. Ct. 1066 (2012).  We review *de novo* a defendant's claim that an enhancement included in calculating his guidelines range

constituted impermissible double counting. *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir.), *cert. denied* 133 S. Ct. 292 (2012). "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Dudley*, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (internal quotation marks omitted). "Double counting a factor during sentencing is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *Id.* at 1227 (internal quotation marks omitted). "Absent a specific direction to the contrary, we presume that the Sentencing Commission intended to apply separate sections cumulatively, and, as a result, a defendant asserting a double counting claim has a tough task." *Webb*, 665 F.3d at 1382 (internal citations and quotation marks omitted).

We have little trouble concluding that the district court did not clearly err in finding the sophisticated-means enhancement was appropriate in this case. As the district court recognized, no particular action in a scheme needs to be especially complicated for the enhancement to be appropriate. *Barrington*, 648 F.3d at 1179. Repetitive, coordinated steps can be sophisticated, even if no single step is particularly complex. *Id.* "There is no requirement that each of a defendant's

4

individual actions be sophisticated in order to impose the enhancement." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). Repeatedly purchasing stolen credit card numbers from abroad, encoding those numbers onto legitimate credit cards, re-encoding cards on the fly, and buying otherwise legitimate gift cards for resale to otherwise legitimate online purchasers to avoid detection is, in the language of the guidelines commentary, "especially complex or especially intricate offense conduct [in] . . . the execution and concealment of [the] offense." U.S.S.G. § 2B1.1(b)(10) cmt. n.8(C). We discern no error in the district court's conclusion that the totality of the fraudulent scheme in which Dancer participated was complex and intricate enough to warrant the sophisticated-means enhancement.

Dancer also argues that including the sophisticated-means enhancement in his guidelines calculation was impermissible double counting. He contends other enhancements he received already accounted for the use of the encoder and the scope of the enterprise, and the other factors the district court considered, like the use of a laptop and internet purchases, could not, without those double-counted facts, independently constitute sophisticated means. We disagree.

Nothing Dancer presents to us suggests the Sentencing Commission did not intend the sophisticated-means enhancement to apply cumulatively with the other enhancements in §2B1.1(b) that Dancer received. *See Webb*, 665 F.3d at 1382.

5

Indeed, the guidelines indicate to the contrary. "The offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively" absent circumstances not present here. U.S.S.G. § 1B1.1 cmt. n.4(A). Commentary to the guidelines specifically provides that if the conduct on which a sophisticated-means enhancement is based also forms the sole basis for an impeding or obstructing justice enhancement under U.S.S.G. § 3C1.1, then only the sophisticated-means enhancement applies. *Id.* § 2B1.1(b)(10) cmt. n.8(C). But the commentary identifies no other guideline that the Commission intended should not be applied cumulatively with the sophisticated-means enhancement. Further, the focus of the loss amount, victim number, and device-making enhancements Dancer identifies is on sentencing concepts that are distinct from how like facts, in conjunction with other facts of Dancer's offense, support a finding that the offense involved sophisticated means. *See Dudley*, 463 F.3d at 1227.

Because Dancer has not shown that application of the sophisticated-means enhancement in the calculation of his guidelines-range sentence was erroneous or constituted impermissible double counting, we affirm his consecutive 46-month sentences.

**AFFIRMED**.