[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14429
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20767-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAWRENCE S. DURAN,

Defendant-Appellant.

_____

No. 11-14507
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20767-JLK-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIANELLA VALERA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(February 25, 2013)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Lawrence S. Duran and Marianella Valera appeal their convictions and sentences for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; health care fraud, in violation of 18 U.S.C. § 1347; conspiracy to defraud the United States and participate in a kickback scheme, in violation of 18 U.S.C. § 371; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and structuring to avoid reporting requirements, in violation of 31 U.S.C. §§ 5324(a)(1) and (d)(2).  Duran also appeals his convictions and sentences for money laundering, in violation of 18 U.S.C. § 1957.

Duran and Valera pleaded guilty to conspiring to defraud the Medicare health care program from December 2002 until October 2010.  Valera, as the

2

incorporator, registered agent, and sole officer of American Therapeutic Corporation (ATC), registered ATC to be eligible to submit claims to Medicare. Appellants did not associate ATC with Duran because he owed Medicare over $2 million in connection with another business.

The fraud scheme involved Appellants' payment of kickbacks to assisted living facilities (ALFs) and halfway houses so that the ALFs and halfway houses would require their Medicare-eligible patients to participate in the ATC's partial hospitalization programs (PHPs), regardless of the patients' needs or medical conditions. Patients were selected based on their conditions or disorders, but they did not receive proper medical treatment or doctor attention.

Duran and Valera submitted over $202 million in false claims, and received payments totaling over $87 million as a result of their scheme. Despite the higher figure that Appellants billed, they purportedly knew Medicare would only issue payments based on a publicly available schedule of rates, which provided rates lower than the amount billed. Appellants appealed every claim that was denied, and collected co-payments on all of their claims. Duran's stated intent was to get as much money out of Medicare as possible, and he explained that he probably would not have given any money back if he did receive the full billed amount. Duran was also involved in commissioning a study to try and increase the amount of money that PHPs could receive from Medicare.

3

Appellants used Medlink Professional Management Group (Medlink) as a vehicle to launder Medicare funds into cash for kickbacks and personal monetary gain. They also implemented payment schemes through the use of shell companies and sham transactions.

Throughout the course of the case, both Appellants filed multiple requests for a jury trial on various sentencing issues, including the determination of the amount of loss for which they would be held responsible, but neither defendant requested to withdraw his or her plea. The district court denied these requests on the basis that it had discretion to make findings of fact as to sentencing issues. Duran and Valera were assessed the same guideline calculations, except that Duran received an upward departure for disruption of a government function and Valera received an enhancement for abuse of trust. The district court ultimately sentenced Duran to 50 years' imprisonment, while Valera received a 35-year term. They now attack various aspects of their guilty pleas and sentences. We affirm.

## I.

Duran and Valera first argue that the court incorrectly calculated their loss amount by attributing the full amount billed to Medicare—over $202 million—as the amount of loss. They contend that the court applied the wrong standard by determining that the amount billed to Medicare was prima facie evidence of the intended loss amount. They further assert that because they knew in advance that

4

Medicare would only pay 80% of any given claim, their knowledge of the predetermined, allowable amount Medicare would actually pay on a claim is the proper amount of loss. We disagree.

We review the district court's determination regarding the amount of loss under the guidelines for clear error. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009). A district court's choice between two permissible views of the evidence is not clearly erroneous. *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc).

The loss amount is calculated as "the greater of actual loss or intended loss" for purposes of the Sentencing Guidelines. U.S.S.G. § 2B1.1 cmt. n.3. Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," whereas intended loss "means the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i)-(ii). Importantly, intended loss includes pecuniary harm that would have been impossible or unlikely to occur. U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). Because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence," the district court is only required to make a reasonable estimate of the loss amount, and its reasonable estimate will be upheld on appeal. U.S.S.G. § 2B1.1 cmt. n.3(C).

Turning to the instant case, the district court's conclusion that Appellants' intended loss was the total amount billed to Medicare is supported by a permissible

5

view of the evidence. *See Rodriguez De Varon*, 175 F.3d at 945 ("So long as the basis of the trial court's decision is supported by the record *and* does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." (emphasis in original)). The evidence shows that Duran and Valera intended to get as much money out of Medicare as possible. And though Appellants argue quite strenuously that they could not have received the full amount billed and that it should therefore not be counted in the amount of loss, intended loss includes pecuniary harm that would have been impossible or unlikely to occur. *See* U.S.S.G. § 2B1.1 cmt. n.3(A)(ii)(II). "The court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n.3(C). We think using the amount billed to Medicare as an estimate for the amount of loss was reasonable, and that the district court's determination of the amount of loss was not clearly erroneous.

## II.

Duran and Valera also argue that neither of them should have received a four-level vulnerable victim enhancement under U.S.S.G. § 3A1.1. They contend that the victim impact was already contemplated in their base offense level, and the government did not establish that any of the patients were physically or financially harmed. These arguments fall wide of the mark.

The district court's application of the guidelines to the facts is a question of law that we review de novo. *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir.), *cert. denied*, 133 S. Ct. 378 (2012). A court's determination of the facts that support the enhancement is a finding of fact reviewed only for clear error. *Id.* We review allegations of impermissible double counting de novo. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005) (per curiam). Double counting occurs when a district court applies one part of the guidelines to increase a defendant's punishment on account of a kind of harm that was already fully accounted for by the application of another part of the guidelines. *United States v. Dudley*, 463 F.3d 1221, 1226–27 (11th Cir. 2006) (per curiam). "We presume that the Sentencing Commission intended separate guideline sections to apply cumulatively unless specifically directed otherwise." *Id.* at 1227 (internal quotation marks omitted).

Under U.S.S.G. § 3A1.1, a two-level increase is applied where the defendant knew, or should have known, that a victim of the offense was a vulnerable victim, and an additional two-level increase is applied if the offense involved a large number of vulnerable victims. U.S.S.G. § 3A1.1(b). A vulnerable victim is "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise

7

particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. The enhancement applies whenever a defendant selected his victim to take advantage of that victim's perceived susceptibility to the offense. *United States v. Bradley*, 644 F.3d 1213, 1288 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 2375 (2012). Neither bodily injury nor financial loss is required for an individual to qualify as a victim. *Id*. at 1288 & n.128.

The patients here were vulnerable victims because they were forced to participate in the scheme on account of their serious illnesses and disorders, and they were not given proper treatment. Many of these patients had limited cognitive ability and were unable to feed themselves, defecated on themselves, or were unresponsive to group therapy. Doctors rarely saw these patients, except to fill out paperwork, and Appellants frequently included false diagnoses in patient files to maximize the amount of money they could extract from the patients' suffering. In other words, these were vulnerable victims of the most basic kind. And though Appellants argue that the application of this enhancement double counts their conduct, they identify no authority that demonstrates that the Sentencing Commission did not intend for the guidelines to be applied in exactly this fashion. *See Dudley*, 463 F.3d at 1227.

Additionally, we have previously rejected the argument that patients involved in healthcare fraud were not victims because the government—not the

8

patients—was the entity actually harmed by the fraud. *See Bradley*, 644 F.3d at 1288 & n.128 (holding that patients who received faulty prescription drugs in a Medicaid fraud scheme were victims for purposes of the vulnerable victim enhancement). The damage to these patients—collateral or otherwise—was real. Finally, there was more than sufficient evidence to find that a large number of these particularly vulnerable individuals were the victims of Appellants' scheme. The district court did not clearly err in applying the four-level vulnerable victim enhancement.

Duran and Valera also contend that the district court erred in applying an enhancement for sophisticated laundering under § 2S1.1(b)(3) because the enhancement was duplicative of the enhancements for money laundering (§ 2S1.1(b)(2)(B)) and sophisticated means (§ 2B1.1(b)(9)(C)), but they are wrong. Section 2S1.1(b)(3) of the guidelines provides for a two-level increase if the money laundering enhancement of subsection (b)(2)(B) applies and the offense involved sophisticated laundering. The commentary to the guidelines explains that sophisticated laundering means complex or intricate offense conduct pertaining to the execution or concealment of a § 1956 offense, and typically involves the use of fictitious entities, shell corporations, or two or more layers of transactions. U.S.S.G. § 2S1.1 cmt. n.5(A).

In contrast, the money laundering enhancement under § 2S1.1(b)(2)(B) only requires that the defendant was convicted under § 1956. *See* U.S.S.G. § 2S1.1(b)(2)(B). The sophisticated means enhancement under § 2B1.1(b)(9)(C), for its part, provides for a two-level enhancement where the conduct involves especially complex or intricate activity pertaining to the execution or concealment of the offense, but does not limit the offense to money laundering. U.S.S.G. § 2B1.1 cmt. n.8(B). Instead, it is sufficient if the totality of the scheme is sophisticated. *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1066 (2012).

In this case, Duran and Valera used shell corporations and sham transactions to transfer the funds involved. *See* U.S.S.G. § 2S1.1 cmt. n.5(A). Though Appellants contend that the enhancement is duplicative of the enhancements for sophisticated means and money laundering, they identify no authority that demonstrates that the Sentencing Commission did not intend for the guidelines to be applied in this fashion. *See Dudley*, 463 F.3d at 1227 (explaining that, in the absence of evidence to the contrary, we assume the Sentencing Commission intended for enhancements to apply cumulatively). Further, the enhancements have separate requirements and are based on separate conduct. For example, though the sophisticated laundering enhancement refers only to the act of laundering the proceeds of the fraud, the sophisticated means enhancement of

10

§ 2B1.1(b)(9)(C) is directed more globally at the fraudulent scheme itself. Accordingly, it was not clearly erroneous for the district court to apply the sophisticated laundering enhancement on top of the enhancements for money laundering and sophisticated means.

## III.

Appellants next argue that the district court committed reversible error by failing to verify whether each of them had personally received and reviewed a copy of the presentence investigation report (PSR) prior to sentencing.  They claim that the district court only confirmed with their respective attorneys that the attorneys had received and discussed the PSR with the Appellants, and that this is not enough.  We again disagree.

Federal Rule of Criminal Procedure 32 requires a sentencing court to "verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to" the PSR prior to sentencing.  Fed. R. Crim. P. 32(i)(1)(A). Here, the district court confirmed with the attorneys for Duran and Valera that they had gone over the PSR with their clients.  In the absence of some indication to the contrary, a sentencing judge is permitted to rely on an attorney's submission that he has gone over the PSR with his client.  The district judge therefore satisfied Rule 32.

11

**IV.**

Duran next argues that his plea colloquy violated the requirements of Federal Rule of Criminal Procedure 11, which rendered his guilty pleas defective and involuntary. He contends that the magistrate judge erred by failing to: (1) obtain a waiver of his right to enter his plea before a district court; (2) explain the nature of the offenses or ensure that Duran understood them; (3) explain the applicable maximum penalties; (4) enter a factual basis for the plea; and (5) explain that Duran could not enter guilty pleas while reserving the right to have his loss amount determined at a trial. As to the last assertion, Duran specifically states that he entered his guilty plea based on the condition that he would receive a jury trial for the amount of loss issues.

Similarly, Valera argues that all of her sentencing enhancements were improperly imposed because they violated the terms of her guilty plea. To that end, she asserts that, as a condition to her guilty plea, she reserved her right to a jury trial as to any fact used to enhance her sentence. All of Appellants' arguments in this regard lack merit.

Where a defendant did not move to withdraw his plea, we review any issues regarding his plea colloquy for plain error. *United States v. Moriarty*, 429 F.3d 1012, 1019 & n.2 (11th Cir. 2005) (per curiam). Arguments raised for the first time on appeal in a criminal case are reviewed for plain error. *United States v.*

*Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "We will find plain error only where (1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) (per curiam). There can be no plain error where there is no statute, rule, or binding precedent from the Supreme Court or from this Court directly resolving the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

In accepting a defendant's guilty plea, the district court must specifically address the three core principles of Rule 11 by "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Moriarty*, 429 F.3d at 1019. The Supreme Court has ruled that a defendant who seeks to establish plain error with regard to Rule 11 "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004).

Finally, "[w]e have also held that a district court may make additional factual findings under a preponderance of the evidence standard," and "may enhance a sentence based upon judicial fact-finding provided that its findings do

not increase the sentence beyond the statutory maximum authorized by facts determined in a guilty plea or jury verdict." *United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007) (per curiam).

Turning to the facts at hand, Appellants have failed to carry their burden of demonstrating that they would not have entered a guilty plea but for the alleged errors in the court below. *See Dominguez Benitez*, 542 U.S. at 83, 124 S. Ct. at 2340. Even were that not so, the core requirements of Rule 11 were satisfied and none of the alleged defects in the pleas are supported by the record. The district court acted within its discretion in making factual findings with regard to Duran's and Valera's sentencing issues, and their pleas were entered without any representations regarding a jury trial for sentencing issues. *See Dean*, 487 F.3d at 854. And even if they could point to some error below, that error would not be plain. *See United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). Accordingly, the court did not err by accepting Appellants' guilty pleas or by denying their request for a jury trial as to the facts underlying their guidelines calculations.

## V.

Appellants next argue that their sentences were substantively unreasonable. Specifically, Duran submits that his sentence is unreasonable because the district court did not consider his individual circumstances, but instead aimed at

14

formulating a sentence to address the overall culture of corruption and fraud in the medical field.  He emphasizes his good character and background, age, and the nonviolent nature of his offenses as evidence that the district court's 50-year sentence was unreasonable.  Valera, for her part, avers that her sentence is substantively unreasonable because it did not consider her individual circumstances, including her work ethic, her subordinate personal and professional relationship with Duran, her cooperation with the government, and the nonviolent nature of the offenses.

We review the substantive reasonableness of the sentence imposed by the district court "under [the] deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  In determining whether a sentence is substantively reasonable, we engage in a "deferential" assessment of whether the sentence imposed is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).  We measure reasonableness against the factors outlined in § 3553(a).  *United States v. Pugh*, 515 F.3d 1179, 1188 (11th Cir. 2008); *see also Talley*, 431 F.3d at 788 ("We must evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in [§] 3553(a).").  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the

15

defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to deter criminal conduct; (4) the need to protect the public from further crimes of the defendant; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the guideline range; (8) policy statements of the United States Sentencing Commission; (9) the need to avoid unintended sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The party challenging a sentence "bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in [§] 3553(a)." *Talley*, 431 F.3d at 788. "In our evaluation of a sentence for reasonableness, we recognize that there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory [g]uidelines range, we ordinarily will expect that choice to be a reasonable one." *Id.* Thus, we will vacate and remand for a new sentencing "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted); *see also Pugh*, 515 F.3d at 1194

16

(observing that "a sentence may be unreasonable if it is grounded solely on one factor, relies on impermissible factors, or ignores relevant factors").

Duran and Valera wholly fail to carry their burdens of demonstrating that the district court committed a clear error of judgment in weighing the § 3553(a) factors. *See Irey*, 612 F.3d at 1190. The offenses in this case spanned nearly eight years and involved Appellants paying ALFs and halfway houses to exploit thousands of seriously impaired individuals for their Medicare benefits. Appellants submitted over $200 million in bogus Medicare claims, received *over $87 million* in fraudulent payments, and used shell corporations and sham transactions to launder their ill-gotten gains. They did so at the expense of the public fisc and thousands of individuals unable to effectively care for themselves. In our view, crimes such as these stem from greed of the worst variety, and evince a parasitism and disregard for societal norms that are anathema to civil society. It is the very aim of sentencing to exorcise individuals such as these from the public square. *See* 18 U.S.C. § 3553(a)(2) (providing that the purposes of sentencing include providing just punishment for an offense, deterring future criminals, and protecting the public from the defendant). The district court considered the sentencing factors and sought to fashion total sentences that adequately punished the Appellants, provided sufficient deterrence to would-be criminals, and promoted respect for the law. These sentences do just that.

Finally, and though Appellants raise various mitigating factors in their defense, the weight to be given any particular factor is left to the sound discretion of the district court, and we will not disturb the exercise of that discretion absent a clear error in judgment. *See Irey*, 612 F.3d at 1190. What is more, the sentences imposed actually constitute a significant downward variance from the guideline sentence. Duran's 50-year total sentence, for example, is well below his guideline sentence of life imprisonment and his statutory maximum sentence of 435 years' imprisonment, a fact that augurs strongly in favor of the reasonableness of his sentence in light of the scope and nature of these offenses. *See Gonzalez*, 550 F.3d at 1324 (noting, in upholding sentence as reasonable, that it was "well below the maximum ten-year sentence"). Same goes for Valera, whose 35-year total sentence is far shy of her guideline sentence of life imprisonment and her statutory maximum sentence of 235 years.[1] *See id*. In sum, we think the sentences imposed on Duran and Valera by the district judge in this case were not only reasonable, but proper.

## VI.

Duran next contends that the district court's application of an upward departure for significant disruption of a government function under U.S.S.G.

---

[1] Though the guideline range was life imprisonment, the maximum guideline penalty cannot exceed the statutory maximum penalty, *see* U.S.S.G. § 5G1.1(b), so Duran's guideline sentence was technically 435 years' imprisonment and Valera's guideline sentence was 235 years' imprisonment.

§ 5K2.7 was clear error because it was based on the same underlying conduct that led to his convictions and there was no factual support for the court's rationale that the Medicare program was unduly burdened by the sheer volume of Duran's scheme. Like the others, this argument falls flat.

The sentencing guidelines authorize a district court to depart from a defendant's applicable guideline range "[i]f the defendant's conduct resulted in a significant disruption of a governmental function." *See* U.S.S.G. § 5K2.7. We have previously held that "the significant disruption of a governmental function is not inherent in the offense of large-scale fraud involving an abuse of public trust." *United States v. Gunby*, 112 F.3d 1493, 1501 (11th Cir. 1997). And in holding that the significant disruption departure was properly applied to a fraudulent billing scheme where Medicare lost $15 million, we explained that "[e]very time [a defendant defrauds] Medicare, the government los[es] funds that it otherwise could have used to provide medical care to eligible Medicare patients." *United States v. Regueiro*, 240 F.3d 1321, 1324 (11th Cir. 2001) (per curiam). Just so here. It is no great secret that the Medicare program is cash strapped, and that the amount of money left in the pot for the legitimate care of our neediest citizens dwindles with each dollar the program pays out to the criminals such as Duran who seek to defraud it. We find the argument that Duran did not cause a significant disruption to the government's ability to administer the Medicare program when he diverted

19

over $87 million in funds from the program through a concerted scheme of fraudulent billing, appealing every claim denied, and concealment of the fraud to be unpersuasive, if not verging on frivolity. The district court did not clearly err in applying the § 5K2.7 departure.

## VII.

Valera additionally argues that the district court deprived her of the right to be present at all stages of sentencing. She states that the district court improperly incorporated the proceedings from Duran's sentencing and the trial of Judith Negron, another codefendant in this case. She argues that it was error to consider the evidence from these proceedings because she did not have an opportunity to be presented with, or make challenges to, the evidence. Because this argument was raised for the first time on appeal, we review it only for plain error. *See Rodriguez*, 398 F.3d at 1298. We find none.

A defendant has a constitutional right to be present at sentencing. *United States v. Portillo*, 363 F.3d 1161, 1166 (11th Cir. 2004) (per curiam). However, the defendant need not be afforded the same degree of due process protections at sentencing as he is entitled to at trial. *United States v. Satterfield*, 743 F.2d 827, 840 (11th Cir. 1984). A district court may take judicial notice of its own records. *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

20

Valera has failed to establish that the district court was not permitted to incorporate the proceedings of Valera's codefendants. *See id.*; *see also United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990) (explaining that a court may consider evidence adduced at a codefendant's proceeding, even if defendant was not present at that sentencing, so long as the defendant has an opportunity to challenge the evidence at her own sentencing). Where "the explicit language of the statute or rule does not specifically resolve the issue, and there is no precedent from this Court or the Supreme Court directly resolving it, there is no plain error." *United States v. Frank*, 599 F.3d 1221, 1239 (11th Cir. 2010). Valera points to no rule or statute, nor anything from this Court or the Supreme Court, that would render erroneous the district court's consideration of the related proceedings of her codefendant in this matter. Hence, she cannot show plain error. *See Lejarde-Rada*, 319 F.3d at 1291.

## VIII.

Valera also asserts for the first time on appeal that the district court erred by imposing a general sentence rather than articulating individual sentences for each of the counts she was convicted for. She contends that such a general sentence is per se illegal. We reject Valera's argument on this point, however, because her sentence was not a general sentence in the first place.

We review the legality of a sentence de novo. *Moriarty*, 429 F.3d at 1025. A general sentence is per se illegal and requires a remand. *Id.* "A general sentence is an undivided sentence for more than one count that does not exceed the maximum possible aggregate sentence for all the counts but does exceed the maximum allowable sentence on one of the counts." *Id.* (internal quotation marks omitted). Even where the sentencing court errs in sentencing a defendant, the court may correct a sentence that resulted from clear error within 14 days after oral pronouncement of the sentence. Fed. R. Crim. P. 35.

In the present case, the district court expressly stated at sentencing that it was announcing the total sentence imposed, but that it would provide a written order with the specific sentence as to each count in a written judgment. True to its word, the court filed a written order the same day the sentence was orally pronounced setting forth the specific breakdown of Valera's sentence. *See also* Fed. R. Crim. P. 35. There was no error.

## IX.

Finally, Valera contends that the district court plainly erred in applying a two-level enhancement under U.S.S.G. § 3B1.3 for abuse of trust because the government was the sole victim of the offenses and Medicare providers do not occupy positions of trust relative to the Medicare program. She also argues that the enhancement is improper as applied to her relationship with the patients

22

because the conduct used to justify the enhancement on that score would be encompassed by her underlying convictions.

A defendant is subject to a two-level enhancement of his offense level if she "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A position of trust is "characterized by professional or managerial discretion," and a person occupying a position of trust ordinarily receives less supervision than an employee whose responsibilities are non-discretionary in nature. U.S.S.G. § 3B1.3 cmt. n.1. In the fraud context, § 3B1.3 applies "where a fiduciary or personal trust relationship exists with other entities, and the defendant takes advantage of the relationship to perpetrate or conceal the offense." *United States v. Garrison*, 133 F.3d 831, 838 (11th Cir. 1998) (internal quotation marks omitted); *see United States v. Liss*, 265 F.3d 1220, 1229–30 (11th Cir. 2001) (holding that a physician who received kickbacks for patient referrals abuses a position of trust for purposes of § 3B1.3 enhancement).

We discern no error here. Based on her position as a licensed mental health counselor who knowingly submitted false claims to Medicare, Valera enjoyed a position of trust and exploited that position of trust in executing her fraud. She has failed to identify any controlling authority that establishes that the district court erred in applying the enhancement in this case, especially in light of the fact that

she used her positions as a licensed mental health counselor and the registered agent and sole officer of ATC to perpetuate and conceal her fraud offenses. *See Lejarde-Rada*, 319 F.3d at 1291 (explaining the stringent requirements of the plain error standard). Even if she had identified an error, she has failed to demonstrate that the "error affect[ed] [her] substantial rights in that it was prejudicial and not harmless," *Clark*, 274 F.3d at 1326, so her argument would fail in any event. Had the abuse-of-trust enhancement not been applied, Valera's offense level would have been 45, which would yield the same guideline sentence (life imprisonment) as would an offense level of 47. *See* U.S.S.G. Sentencing Table (providing for life imprisonment for any offense level of 43 or above). Accordingly, Valera cannot show plain error with respect to application of the abuse-of-trust enhancement.

For the foregoing reasons, we conclude that neither Duran nor Valera points to any error sufficient to disturb the district court's judgment in this case. The sentences are harsh, but the offenses were grave. So goes the world of crime and punishment.

**AFFIRMED.**