[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12106
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cr-60190-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALLACE LEE BREWTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 29, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit
Judges.

PER CURIAM:

Wallace Brewton was convicted on one count of conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); one count of committing Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); one count of conspiracy to use and brandish a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(o); and one count of using and brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  The district court imposed a sentence of 360 months' imprisonment.  Brewton now appeals his conviction and sentence on various grounds.

## I.

On the afternoon of July 25, 2014, two men robbed Oceans Jewelers, a jewelry store in Davies, Florida.  One of the robbers was unarmed.  The other used a gun to threaten and coerce the store's manager, Abraham Bendahan.  After relieving the store of cash and jewels, and unsuccessfully attempting to smash its surveillance equipment, the robbers fled.  Although Bendahan was the only eyewitness present at the time, much of the robbery was caught on the store's security footage.

During the ensuing investigation, the police quickly discovered evidence of Brewton's involvement in the robbery.  One of the robbers, the unarmed one, left behind palm and fingerprints, which crime scene technicians later identified as

2

Brewton's.  Bendahan also positively identified Brewton from a photographic lineup as one of the robbers.  Based on the print evidence and Bendahan's identification, the police arrested Brewton.

After the arrest, police interviewed two of Brewton's former girlfriends. Both women said that Brewton gave or attempted to give them jewelry as gifts toward the end of July 2014.  Both women turned over the jewelry to the police and those pieces matched missing inventory from the jewelry store.  Both women positively identified Brewton from the jewelry store's security footage.  One woman also told police that Brewton had showed her a video clip of the robbery (which had appeared on the news), asked her if she could identify him from the video, and asked whether she thought he would get caught.

For Brewton's involvement in the July 2014 robbery, the government charged him with four counts:  (i) conspiracy to commit Hobbs Act Robbery, (ii) Hobbs Act Robbery, (iii) conspiracy to use and brandish a firearm during the commission of a crime of violence, and (iv) using and brandishing a firearm during the commission of a crime of violence.  At trial, the government introduced evidence and testimony from Bendahan, Brewton's former girlfriends, and police investigators.  The parties also stipulated that "Oceans Jewelers is a company that operates in interstate commerce by selling products that travel in and affect

3

interstate commerce." Brewton did not testify at trial and the defense rested without presenting any evidence or calling any witnesses.

At the close of trial, Brewton moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion. Before excusing the jurors to deliberate, the district court asked Brewton's counsel whether he had any objections to the proposed jury instructions. Defense counsel replied that he had no objections. The jury found Brewton guilty on all counts.

## II.

Brewton first challenges the sufficiency of the evidence against him. "We review de novo whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). "Accordingly, the evidence will be sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Id. (quotation marks omitted).

### A.

Brewton contends that the evidence was insufficient to show that he used or brandished a firearm during the robbery, in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii), or that he conspired to do so, in violation of 18 U.S.C. § 924(o). He argues that the evidence shows that he was unarmed and that only his confederate used and brandished a gun during the robbery. According to Brewton, that is not enough to establish that he used or agreed to the use of a gun during the robbery.

To sustain a conviction under § 924(c)(1)(A), the government must show that the defendant: "(1) knowingly (2) possessed a firearm (3) during and in relation to a drug trafficking crime or a crime of violence." United States v. Isnadin, 742 F.3d 1278, 1307 (11th Cir. 2014). "Possession may be actual or constructive, joint or sole." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004). "[U]nder § 924(c), a defendant may be liable for a co-conspirator's possession [of a firearm] if possession was reasonably foreseeable." Id. And "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." Rosemond v. United States, 572 U.S. ___, 134 S. Ct. 1240, 1250 n.9 (2014).

To sustain a conviction under § 924(o), the government must show: "(1) a conspiracy existed to commit the substantive offense; (2) [the defendant] knew of the conspiracy, and (3) [the defendant], with knowledge, voluntarily joined it." Isnadin, 742 F.3d at 1307. "The existence of a conspiracy may be proved by

5

circumstantial evidence and may be inferred from concert of action." United States v. Thompson, 422 F.3d 1285, 1290 (11th Cir. 2005) (quotation marks omitted). "Indeed, because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." United States v. Pineiro, 389 F.3d 1359, 1369 (11th Cir. 2004) (quotation marks and alteration omitted).

The evidence shows that Brewton and his confederate acted in concert to rob the jewelry store. When Brewton's confederate pulled out the gun, Brewton did not object or withdraw from the robbery. Instead, when Brewton's confederate revealed the gun, trained it on the store's manager, and threatened him with it, Brewton emptied the manager's pockets, took his money, and grabbed the store's cash and jewelry. The jury could reasonably infer from that concerted effort that Brewton knew that his confederate would use and brandish a gun to execute the robbery. As such, the evidence was sufficient to sustain Brewton's convictions under §§ 924(c)(1)(A) and 924(o).

## B.

Brewton next contends that the evidence was insufficient to show the interstate commerce nexus necessary to sustain his convictions for committing and conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). He points to the fact that the government, in its superseding indictment, and the district

6

court, in responding to a question from the jury, identified Bendahan as the victim of the robbery.  He argues that because the victim was an individual, rather than a business engaged in interstate commerce, the government failed to show an interstate commerce nexus.  He is wrong.

"The Hobbs Act prohibits robbery or extortion, and attempts or conspiracies to commit robbery or extortion, that in any way or degree obstruct, delay or affect commerce or the movement of any article or commodity in commerce."  United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001) (quotation marks and alterations omitted).  "Only a de minimis nexus with interstate commerce is required."  United States v. Farrell, 877 F.2d 870, 875 (11th Cir. 1989).  And "[w]hile the Hobbs Act usually is applied to robberies of businesses, criminal acts directed toward individuals also may violate the Hobbs Act."  Diaz, 248 F.3d at 1084.  The government may, for instance, prosecute a defendant for Hobbs Act robbery aimed at an individual when "the crime causes the individual to deplete the assets of an entity engaged in interstate commerce."  Id. at 1084–85.

The parties stipulated that Oceans Jewelers was a company that operated in interstate commerce by selling products that travel in and affect interstate commerce.  The evidence presented at trial showed that the robbery was directed toward Bendahan, who also testified that Oceans Jewelers suffered a total loss of about $250,000.  That evidence, in combination with the parties' stipulation,

7

showed that Brewton's actions caused Bendehan to deplete the assets of an entity engaged in interstate commerce.  That was all that was needed to show an interstate commerce nexus to support Brewton's Hobbs Act robbery convictions.

### III.

Brewton next contends that the district court improperly instructed the jury on the government's theory of aiding and abetting the use or brandishing of a fire arm during the robbery.  We have said that "where a defendant agrees to the court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result."  United States v. Carter, 776 F.3d 1309, 1323 (11th Cir. 2015).  Here, Brewton's attorney accepted the court's proposed jury instructions by affirmatively stating that he had no objections to them.  As such, any error was invited and Brewton has waived his right to challenge the jury instruction on appeal.

### IV.

Brewton contends that the district court violated his due process rights when it admitted Bendahan's out-of-court identification.  Because Brewton failed to object to the introduction of Bendahan's out-of-court identification in the district court, we review only for plain error.  United States v. Chilcote, 724 F.2d 1498, 1503 (11th Cir. 1984).

8

We use "a two-step analysis in assessing the constitutionality of a trial court's decision to admit an out-of-court identification." Diaz, 248 F.3d at 1102. We must first "determine whether the original identification procedure was unduly suggestive." Id. "If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Id.

There is absolutely no indication that the procedure by which Bendahan identified Brewton was unduly suggestive. Indeed, Brewton does not allege that the identification procedure was unduly suggestive. He instead asserts that Bendahan's identification was unreliable "because the robbery lasted only a few minutes and Mr. Bendahan . . . was under a great amount of stress." Without more, that is insufficient to show that the district court plainly erred by admitting Bendahan's out-of-court identification.

## V.

Brewton also contends that the combination of trial errors warrant reversal of his conviction under the cumulative error doctrine. Because Brewton has failed to establish that any of the district court's rulings were erroneous, "the argument that cumulative trial error requires that this Court reverse [his] convictions is without merit." United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005).

## VI.

9

Finally, Brewton challenges his sentence on three grounds.

### A.

He first argues that the district court erred in calculating his base offense level under U.S.S.G. § 2K2.1 and in applying the career offender enhancement under U.S.S.G. § 4B1.1.  Under § 2K2.1, a defendant's base offense level is 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  The § 4B1.1 career offender enhancement applies when, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  The definition of "crime of violence" is the same in both § 2K2.1 and § 4B1.1.

The district court identified five potential predicate offenses, all from Florida:  (1) robbery; (2) burglary of a dwelling; (3) battery on a law enforcement officer; (4) escape; and (5) resisting an officer with violence.  Brewton contends that in light of the Supreme Court's decision in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015), his convictions for Florida burglary, battery on law enforcement officer, and escape no longer qualify as crimes of violence.

Brewton's argument fails for two independently sufficient reasons.  The first independently sufficient reason that his argument fails is because, as Brewton

himself concedes, his convictions for robbery and resisting arrest an officer with violence still qualify as crimes of violence under our circuit's binding precedent. See United States v. Lockley, 632 F.3d 1238, 1241–42 (11th Cir. 2011); United States v. Hill, 799 F.3d 1318, 1321–23 (11th Cir. 2015). Thus, even if his convictions for Florida burglary, battery on law enforcement officer, and escape no longer qualify as crimes of violence, he still has at least two other felony convictions that do qualify has crimes of violence. Accordingly, the district court did not err in calculating his base offense level under § 2K2.1 and in applying the career offender enhancement under § 4B1.1.

The second independently sufficient reason his argument fails is because it is foreclosed by our decision in United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015). There, we held that the vagueness doctrine and the holding of Johnson do not apply to the career offender guideline. Id. at 1193–96. Brewton cites the Supreme Court's recent grant of certiorari in Beckles v. United States, No. 15-8544, 2016 WL 1029080 (U.S. June 27, 2016), which involves the question whether Johnson applies to the sentencing guidelines, and Brewton suggests that the Court may abrogate our Matchett decision in Beckles. As we have explained before, however, "grants of certiorari do not themselves change the law," and "[u]ntil the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply this Court's precedent." Gissendaner v. Comm'r, Ga. Dep't

11

of Corr., 779 F.3d 1275, 1283–84 (11th Cir. 2015) (quotation marks omitted).  We are therefore bound to apply Matchett here.

**B.**

Brewton next argues that the district court's imposition of a four-level enhancement under § 2K2.1(b)(6) constituted impermissible double counting.  Because Brewton did not raise that argument in the district court, we review only for plain error.  See United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir. 2005).

"Impermissible double count occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Dudley, 463 F.3d 1221, 1226–27 (11th Cir. 2006) (quotation marks omitted).  "Double counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." Id. at 1227 (quotation marks and alteration omitted).

Section 2K2.1(b)(6) directs a sentencing judge to increase a defendant's offense level by four if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).  The commentary to the guidelines provides that "[i]f a sentence

12

under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." Id. § 2K2.4 cmt. n.4. That means that "when a defendant is convicted of a § 924(c) violation and an underlying offense, the defendant's possession of a weapon cannot be used to enhance the level of the underlying offense." Diaz, 248 F.3d at 1107 (emphasis omitted).

Brewton argues that the district court applied § 2K2.1(b)(6) to enhance his offense level for possessing a gun during the underlying Hobbs Act robbery offense even though he was convicted of a § 924(c) violation in relation to that robbery. However, even if the district court erred in applying the § 2K2.1(b)(6) enhancement, that error did not prejudice Brewton because it did not affect his sentence.

Brewton's adjusted offense level with the § 2K2.1(b)(6) enhancement was 30. But, after determining that Brewton qualified for the § 4B1.1 enhancement, the court increased his offense level to 37 because that offense level was "greater than the offense level otherwise applicable." U.S.S.G. § 4B1.1(b). Thus, the § 2K2.1(b)(6) enhancement had no effect on Brewton's total offense level and ultimate guideline range because, absent the enhancement, his total offense level

13

would have still been 37 under § 4B1.1.  Accordingly, Brewton cannot establish plain error.

## C.

Lastly, Brewton argues that his 360-month total sentence was procedurally and substantively unreasonable.  He first argues that his sentence was procedurally unreasonable because it was based on the district court's erroneous application of the guidelines.  As we have already explained, however, the court did not err in calculating Brewton's base offense level or in applying the guideline enhancements.  His sentence was therefore procedurally reasonable.

Brewton next argues that his sentence was substantively unreasonable because the court improperly weighed the 18 U.S.C. § 3553(a) factors by failing to adequately consider his mitigating factors such as his minor child, mental health issues, and drug addictions.  That assertion, without more, is not enough to show that the district court made a clear error of judgment in weighing the § 3553(a) factors.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) ("We will defer to the district court's judgment regarding the weight given to the § 3553(a) factors unless the district court has made a clear error of judgment and has imposed a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.") (quotation marks omitted).  Moreover, his sentence was at the low end of his advisory guideline range, which we ordinarily expect to be

14

reasonable.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  He has failed to show that his sentence is substantively reasonable.

**AFFIRMED.**